NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4115
_____

MONITA HARA,
                              Appellant
v.

THE PENNSYLVANIA DEPARTMENT OF EDUCATION;
JOHN TOMMASINI; CHRISTINE BRENNAN
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 09-cv-01014)
District Judge:  Honorable A. Richard Caputo
_____

Submitted Under Third Circuit LAR 34.1(a)
July 13, 2012

Before:  FUENTES, HARDIMAN, and ROTH, *Circuit Judges*.

(Filed: August 15, 2012)
_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Monita Hara appeals the District Court's summary judgment on her First

Amendment retaliation claim.  We will affirm.

I

Because we write for the parties, who are well acquainted with the case, we recite only the essential facts and procedural history.

Monita Hara was employed by the Pennsylvania Department of Education (the Department) as the Superintendent of the Scranton State School for the Deaf (SSSD or the School). In an article published in the *Scranton Times Tribune* on April 20, 2009, Hara criticized the Department's plan to cut SSSD's state funding and transfer ownership and control of the School to a private non-profit entity. On May 12, 2009, Hara was called in to meet with John Tommasini, the Department's Director of the Bureau of Special Education, and Christine Brennan, its Director of Human Resources, to discuss the article. After she was told that she would be suspended for ten days and reassigned to the Department's Harrisburg office, Hara resigned.

On May 29, 2009, Hara filed a complaint in federal court against the Department, Tommasini, and Brennan, alleging constructive discharge in violation of federal and state law. On January 22, 2010, the District Court dismissed Hara's state-law claim in its entirety but dismissed her federal claim only as to the Department. The District Court ruled that Hara had pled sufficient facts to state a viable First Amendment retaliation claim against Tommasini and Brennan in their individual capacities. On November 1, 2011, the District Court granted summary judgment on the remaining claim against Tommasini and Brennan. This timely appeal followed.

2

II

A

We have jurisdiction over this appeal under 28 U.S.C. § 1291. "We review an award of summary judgment de novo, applying the same test on review that the District Court should have applied" and construing facts in the light most favorable to the nonmoving party. *MBIA Ins. Corp. v. Royal Indem. Co.*, 426 F.3d 204, 209 (3d Cir. 2005). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"To state a First Amendment retaliation claim, a plaintiff must allege two things: (1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006). "The first factor is a question of law; the second factor is a question of fact." *Id.* A public employee's statement is protected activity only where (1) the employee spoke as a citizen (2) about a matter of public concern and (3) "the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." *Id.* at 241–42 (quoting *Garcetti v. Ceballos*, 547 U.S.

3

410, 418 (2006)). When assessing whether the government employer's justification is adequate, "[c]ourts balance the First Amendment interest of the employee against 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Borough of Duryea, Pa. v. Guarnieri*, 131 S. Ct. 2488, 2493 (2011) (quoting *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968)). Taking "into account the extent of authority entailed in the employee's position," this "balancing test considers 'whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise.'" *Curinga v. City of Clairton*, 357 F.3d 305, 310 (3d Cir. 2004) (quoting *Rankin v. McPherson*, 483 U.S. 378, 388 (1987)). Actual disruption is not necessary provided that the speech "has some potential to affect the entity's operations." *Garcetti*, 547 U.S. at 418.

B

The District Court granted summary judgment after concluding that Hara's newspaper article did not constitute protected speech because the potential detriment to close working relationships and to the Department's operations at SSSD significantly outweighed Hara's interest in free speech. We will affirm, largely for the reasons stated by the District Court in its thorough opinion.

4

The propriety of summary judgment in this case depends on whether Hara's article constituted protected speech. Because Defendants do not contest that Hara wrote it as a citizen and about a matter of public concern, we deem those elements satisfied. Like the District Court, we see no evidence to suggest that the article impaired discipline by superiors or harmony among co-workers. Therefore, we consider whether the article had a deleterious impact on close working relationships for which personal loyalty and confidence are necessary, or whether it impeded the performance of Hara's duties or interfered with the regular operation of the Department.

To determine whether the article had a detrimental effect on close working relationships, we ask if "'the relationship between superior and subordinate is of such a personal and intimate nature that certain forms of public criticism of the superior by the subordinate would seriously undermine the effectiveness of the working relationship between them.'" *Sprague v. Fitzpatrick*, 546 F.2d 560, 564 (3d Cir. 1976) (quoting *Pickering*, 391 U.S. at 570 n.3). The "crucial variant" in this inquiry is "the hierarchical proximity of the criticizing employee to the person or body criticized." *Id.* at 564.

Hara's role as the Superintendent of SSSD—the highest ranking official position at the School—placed her in hierarchical proximity to the Department and created a sufficiently close relationship between them. Tasked with facilitating SSSD's transition to the private sector by providing leadership and information during that interval, Hara was "relied upon by the Pennsylvania Secretary of Education to further [the

5

Department's] policies in specific regard to the SSSD, and her actions cut directly against this goal." *Hara v. Pa. Dep't of Educ.*, No. 3:09-CV-1014, 2011 WL 5238728, at *6 (M.D. Pa. Nov. 1, 2011).

Furthermore, the article had some potential to interfere with the regular operation of the Department. Gerald L. Zahorchak, Pennsylvania's Secretary of Education, told Hara that her cooperation would be helpful in facilitating SSSD's transition. Hara's article—which manifests not merely a lack of support, but an active attempt to thwart the Department's objective—was inimical to the transition. Additionally, because Hara's article was published before the Department secured final approval of its plans, her request that readers "continue to write letters, contact [their] legislators, and ask the good Governor Rendell for a change of heart" could have interfered with the transition.

In sum, we agree with the District Court that Hara's article had both a detrimental impact on close working relationships and some potential to interfere with the regular operation of the Department. Accordingly, adequate justification existed for treating Hara differently from other members of the public, her article did not constitute protected speech, and the District Court's summary judgment was proper. For those reasons, we will affirm.