# United States Court of Appeals
### For the Eighth Circuit

_____

No. 17-1002

_____

Donald Morgan

*Plaintiff - Appellee*

v.

Michael Robinson, Washington County Sheriff, an individual

*Defendant - Appellant*

Washington County, Nebraska

*Defendant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: September 25, 2018
Filed: March 29, 2019

_____

Before SMITH, Chief Judge, WOLLMAN, LOKEN, COLLOTON, GRUENDER, BENTON, SHEPHERD, KELLY, ERICKSON, GRASZ, and STRAS, Circuit Judges, En Banc.[1]

_____

BENTON, Circuit Judge.

---

[1] Judge Kobes did not participate in the consideration or decision of this matter.

Donald Morgan sued his boss Michael Robinson for First Amendment retaliation under 42 U.S.C. § 1983. Robinson moved for summary judgment based on qualified immunity. The district court denied the motion. This court reverses and remands.

## I.

Morgan is a deputy in the Washington County, Nebraska Sheriff's Department. Robinson is the elected sheriff. In 2014, Morgan ran against Robinson in the primary election. During the campaign, Morgan publicly made statements about the sheriff's department and his plans to improve it. Robinson won. Six days later, Robinson terminated Morgan's employment, claiming his campaign statements violated the department's rules of conduct.

Morgan sued Robinson for retaliatory discharge in violation of the First Amendment. Robinson moved for summary judgment based on qualified immunity. The district court denied the motion, finding "genuine issues of material fact regarding the constitutionality of the termination, and whether Robinson should have reasonably known the termination was unlawful." *Morgan v. Robinson*, 2016 WL 10636372, at *5 (D. Neb. Dec. 8, 2016). On appeal, a panel of this court affirmed. *Morgan v. Robinson*, 881 F.3d 646, 650 (8th Cir. 2018), *reh'g en banc granted, opinion vacated* (Mar. 21, 2018). This court granted rehearing en banc, vacated the panel decision, and now reverses.

## II.

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **Fed. R. Civ. P. 56(a)**. Ordinarily, this court lacks jurisdiction over a denial of summary judgment "because such an order is not a final decision." ***Division of Emp't Sec. v. Board of***

***Police Comm'rs***, 864 F.3d 974, 978 (8th Cir. 2017).  However, if the moving party claims qualified immunity, "an immediate appeal is appropriate . . . because immunity is effectively lost if a case is erroneously permitted to go to trial."  ***Id.***  This court reviews de novo denials of summary judgment based on qualified immunity.  ***Id.***  *See* ***Spirtas Co. v. Nautilus Ins. Co.***, 715 F.3d 667, 670 (8th Cir. 2013) ("This court reviews de novo a grant of summary judgment, construing all facts and making all reasonable inferences favorable to the nonmovant.").

Qualified immunity shields officials from civil liability in § 1983 actions when their conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  ***Pearson v. Callahan***, 555 U.S. 223, 231 (2009), *quoting* ***Harlow v. Fitzgerald***, 457 U.S. 800, 818 (1982). "Qualified immunity analysis requires a two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." ***Nord v. Walsh Cty.***, 757 F.3d 734, 738 (8th Cir. 2014) (internal quotation marks omitted).  "Unless both of these questions are answered affirmatively, an appellant is entitled to qualified immunity."  ***Id.***  "And, courts are 'permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first.'" ***Id.*** at 738-39, *quoting* ***Pearson***, 555 U.S. at 236.

III.

The district court found "a genuine issue of material factors" on "the first prong of the qualified immunity analysis." ***Morgan***, 2016 WL 10636372, at \*5.  A panel of this court found that Morgan's termination "violated a right secured by the First Amendment." ***Morgan***, 881 F.3d at 656.  This court need not decide the issue because Robinson did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known." ***Pearson***, 555 U.S. at 231.

-3-

A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks and alteration omitted). "[T]he longstanding principle" is that "'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017), *quoting Ashcroft v. al–Kidd*, 563 U.S. 731, 742 (2011). Instead, "the clearly established law must be 'particularized' to the facts of the case." *Id.*, *quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987). There need not be a case "directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. *See District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (requiring that the "clearly established standard" be defined with a "high degree of specificity" (internal quotation marks omitted)). In other words, qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (per curiam) (internal quotation marks omitted). Morgan has the burden to demonstrate that the law is clearly established. *Sparr v. Ward*, 306 F.3d 589, 593 (8th Cir. 2002).

To determine whether the law was clearly established at the time of Morgan's termination, this court needs to look no further than *Nord v. Walsh*. *Nord*, 757 F.3d 734. There, a deputy sheriff in Walsh County, North Dakota, ran against his current boss. *Id.* at 737. During the campaign, he made comments critical of the sheriff. *Id.* at 742. The sheriff won. *Id.* at 738. The next day, after consulting the county attorney and human resources consultant, he fired the deputy. *Id.* The deputy sued under § 1983 for violations of the First and Fourteenth Amendments. The district court denied the sheriff's motion for summary judgment based on qualified immunity. *Id.*, *citing Nord v. Walsh Cnty.*, 2012 WL 12848433 (D.N.D. Aug. 30, 2012), *rev'd*, 757 F.3d 734 (8th Cir. 2014). This court reversed, finding the sheriff entitled to qualified immunity. *Id.* at 745. This court said, "considering North Dakota law and well-established state and federal jurisprudence, and especially the advice given by

-4-

the Walsh County attorney and its human resources consultant, Sheriff Wild could have logically and rationally believed that his decision to terminate Nord was well within the breathing room accorded him as a public official in making a reasonable, even if mistaken, judgment under the circumstances." *Id.* at 743, *citing* **Stanton**, 571 U.S. at 6.

The facts of this case are similar to *Nord*. Here, as there, the Washington County Sheriff's Department enforces the police powers in the county. *Compare* **Neb. Rev. Stat. § 23-1701.02** ("It shall be the duty of every sheriff to apprehend . . . all felons and disturbers and violators of the criminal laws of this state, to suppress all riots, affrays, and unlawful assemblies . . . and generally to keep the peace in his or her proper city."), *with Nord*, 757 F.3d at 740 (noting that the "sheriff manages and enforces a substantive portion of the sovereign's policing powers"). Both departments are relatively small. In Washington County, three deputies typically work each shift, with two working one half of the county and the third working the county at large. This "presumably means that there will be times when a single deputy will present the face of the sheriff in the county, at least in the assigned district." *Nord*, 757 F.3d at 741. The deputies thus represent the sheriff in public, executing the duties and responsibilities of the department.

The Washington County sheriff, like the sheriff in *Nord*, has the power to appoint and terminate deputies. *See* **Neb. Rev. Stat. § 23-1704.01** ("The sheriff may appoint such number of deputies as he or she sees fit for whose acts he or she will be responsible."); **Neb. Rev. Stat. § 23-1734** ("Any deputy sheriff may be removed, suspended with or without pay, or reduced in either rank or grade or both rank and grade by the sheriff . . . ."). This power necessitates deference "in executing . . . official duties, including the hiring and firing of employees—especially subordinate officers." *Nord*, 757 F.3d at 741. In both counties, the sheriff "has an interest in maintaining the efficient operation" of the office. *Morgan*, 881 F.3d at 653-54, *citing* **Pickering v. Board of Educ.**, 391 U.S. 563, 568 (1968).

-5-

There are two distinctions between the cases, but neither warrants a different outcome. One is the speech at issue. In *Nord*, the speech focused on the sheriff, including comments that his health was poor, his wife did not want him to run, and he planned to resign. *Nord*, 757 F.3d at 742. The sheriff contended these statements were lies and not matters of public concern. *Id.* Here, the speech focused on the county and the sheriff's department. During the campaign, Morgan said: (1) the county communications center had not been completed; (2) rural fire departments lacked adequate radio systems; (3) the county needed more deputies on the road; (4) the office budget did not consider the public's needs; (5) department morale was poor; (6) the department was not doing well; and (7) people were leaving the office because they did not feel respected. The parties dispute whether all of Morgan's statements were true; but they agree some involved matters of public concern.

Morgan argues this difference "render[s] *Nord* irrelevant for purposes of determining whether the law was clearly established in this case." Specifically, he contends *Nord* is inapplicable because the speech there was untruthful, not a matter of public concern, and undeserving of First Amendment protection. This argument has no merit. Although the speech here arguably is entitled to greater protection—an issue this court need not decide—the speech does not necessarily override the sheriff's interest in maintaining the "discipline and harmony" of the office. *Id.* at 743. The *Nord* court said that "even if" the deputy's speech "was fully protected by the Constitution," the sheriff "could have reasonably believed that the speech would be at least potentially damaging . . . and disruptive" and thus the sheriff "could have logically and rationally believed that his decision to terminate Nord was well within the breathing room accorded him as a public official in making a reasonable . . . judgment under the circumstances." *Id.*

Another difference is the impact of the speech. In *Nord*, apparently there was no evidence of disruption or potential disruption. The sheriff there "testified that, during the campaign period, there were no complaints about how the office was run

nor were there any communication problems between the employees." ***Id.*** at 748 (Shepherd, J., dissenting). Here, Robinson testified he believed Morgan's statements were detrimental to the office, harmful to morale, and adversely impacted the public's trust of the office. Deputies expressed similar concerns. They said Morgan's statements bred "uneasiness," made some employees feel uncomfortable, contributed to lack of morale, and created turmoil. Five of these deputies—the entire command staff—recommended his termination. The termination letter said Morgan had "violated the trust" of the administration and his fellow officers and created "disharmony in the office."

Morgan argues that Robinson "has not proven any disruption" and thus should have known that firing him would violate a clearly established right. The dissent also advances this argument, claiming that Robinson provides "no evidence" of "actual disruption," "actual impact," "demonstrated impact," or "indicators of poor morale" created by Morgan's speech. This argument misstates the record. The termination letter and the deposition testimony of Robinson and the command staff about the effect of Morgan's statements are evidence of "actual disruption" and "demonstrated impact."

Even without this evidence, however, Robinson could claim qualified immunity. As the Supreme Court has said, there is no "necessity for an employer to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action." ***Connick v. Myers***, 461 U.S. 138, 152, 154 (1983) (holding that Myer's First Amendment interest did "not require that Connick tolerate action which he reasonably believed would disrupt the office, undermine his authority, and destroy close working relationships"). *See **Garcetti v. Ceballos***, 547 U.S. 410, 418 (2006) ("A government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has *some potential* to affect the entity's operations.") (emphasis added); ***Waters v. Churchill***, 511 U.S. 661, 673

(1994) ("[W]e have consistently given greater deference to government predictions of harm used to justify restriction of employee speech than to predictions of harm used to justify restrictions on the speech of the public at large. Few of the examples we have discussed involve tangible, present interference with the agency's operation. The danger in them is mostly speculative. . . . But we have given substantial weight to government employers' reasonable predictions of disruption, even when the speech involved is on a matter of public concern."); *Hara v. Pennsylvania Dep't of Educ.*, 492 F. App'x 266, 268 (3d Cir. 2012) (citing *Garcetti* and noting that "[a]ctual disruption is not necessary").

This is particularly true here given the "latitude the courts accord a managing law enforcement officer in executing his official duties, including the hiring and firing of employees—especially subordinate officers." *Nord*, 757 F.3d at 741. *See Buzek v. County of Saunders*, 972 F.2d 992, 995 (8th Cir. 1992) ("[L]aw enforcement agencies, more than other public employers, have special organizational needs that permit greater restrictions on employee speech."); *Crain v. Board of Police Comm'rs*, 920 F.2d 1402, 1411 (8th Cir. 1990) ("More so than the typical government employer, the [Missouri Highway] Patrol has a significant government interest in regulating the speech activities of its officers in order to promote efficiency, foster loyalty and obedience to superior officers, maintain morale, and instill public confidence in the law enforcement institution.") (internal quotation marks omitted).

The termination letter, Robinson's testimony, and the testimony of five other deputies, show—even more so than in *Nord*—that Robinson "could have reasonably believed" that Morgan's speech was "at least potentially damaging to and disruptive of the discipline and harmony of and among co-workers in the sheriff's office and detrimental to the close working relationships and personal loyalties necessary for an effective and trusted local policing operation." *Nord*, 757 F.3d at 743.

*Nord* was decided in June 2014. Robinson fired Morgan one month earlier. Thus, he did not have the benefit of the *Nord* decision to support his belief that he was not violating a clearly established right. Still, *Nord* supports Robinson. A clearly established right must be one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." **Reichle**, 566 U.S. at 664 (internal quotation marks and alteration omitted). "[E]xisting precedent must . . . place[] the statutory or constitutional question beyond debate." **al-Kidd**, 563 U.S. at 741. The facts here are similar to *Nord*. That decision held the law not clearly established in November 2010. Neither Morgan nor this court finds any intervening law that clearly established the law before his termination. *See* **White**, 137 S. Ct. at 552 (requiring that clearly established law be "particularized" to the facts of the case); **Hanson as Tr. for Layton v. Best**, 915 F.3d 543, 548 (8th Cir. 2019) (holding that the plaintiff "must identify controlling authority from the Supreme Court or our prior case law or a robust consensus of cases of persuasive authority that places the constitutional question beyond debate" (internal quotation marks omitted)). *See also* **Brickey v. Hall**, 828 F.3d 298, 305 (4th Cir. 2016) (holding officer entitled to qualified immunity where the plaintiff had "not directed us to any case that would have clearly warned [the officer] that terminating" the plaintiff for his comments "would violate his First Amendment rights"). Thus, *Nord* shows the constitutional question was not "beyond debate" in May 2014.[2] **al-Kidd**, 563 U.S. at 741.

---

[2]Morgan cites no applicable precedent that puts the constitutional question beyond debate or shows that a reasonable person would have known the termination was a violation of a clearly established right. Although he cites *Bearden v. Lemon*, 475 F.3d 926 (8th Cir. 2007), for the proposition that "a Deputy Sheriff has a clearly established First Amendment right to make truthful statements on matters of public concern during a campaign for Sheriff," *Bearden* was decided on jurisdictional grounds and does not clearly establish Morgan's right here.

At the time of Morgan's termination, the law was not "sufficiently clear" so that Robinson would have known that terminating him violated his First Amendment rights. *See* **Reichle**, 566 U.S. at 664. Robinson is entitled to qualified immunity. *See* **Nord**, 757 F.3d at 743-44. *See*, *e.g.*, **Bland v. Roberts**, 730 F.3d 368, 391 (4th Cir. 2013) (holding a sheriff entitled to qualified immunity because a "reasonable sheriff could have believed he had the right to choose not to reappoint his sworn deputies for political reasons, including speech indicating the deputies' support for the Sheriff's political opponent"); **Randall v. Scott**, 610 F.3d 701, 715-16 (11th Cir. 2010) (affirming qualified immunity for a district attorney who fired her chief of staff for running against her husband in a county election, holding that the staffer's rights "were not clearly established under broad case law" or cases with "materially similar facts").

\* \* \* \* \* \* \*

The judgment is reversed and the case remanded for proceedings consistent with this opinion.

SHEPHERD, Circuit Judge, with whom KELLY and ERICKSON, Circuit Judges, join, dissenting.

The majority's holding that Sheriff Robinson is entitled to qualified immunity rests on the impermissible factual finding that Robinson terminated Deputy Morgan because of the potentially damaging and disruptive consequences of Morgan's campaign speech. When viewed through the proper lens of a summary judgment appeal, the record does not support the majority's holding. Rather, viewing the facts in the light most favorable to Deputy Morgan, as we must, Sheriff Robinson terminated Morgan's employment solely because of his personal objections to the content of Morgan's campaign speech without the reasonable belief that the statements would have a disruptive effect on the operation of the Sheriff's

-10-

Department.  I would therefore affirm the district court's denial of qualified immunity to Robinson and I respectfully dissent.

I.

Robinson is the elected Sheriff of Washington County, Nebraska, who has held the position since 2000.  He stood for reelection in 2014.  Morgan, a deputy in the Washington County Sheriff's Department, ran against Robinson in the 2014 primary election.  During the campaign, Morgan made public statements about the operations of the Sheriff's Department and his proposed improvements should he be elected.  Robinson won the primary election and six days later terminated Morgan's employment on the grounds that Morgan's campaign statements were untruthful.  In the Termination Notice, Robinson cited the following statements made by Morgan during the campaign as the reasons for the termination:  the communications system was not completed after ten years of construction; the Fire and Rescue agencies could not communicate and someone would be hurt or killed if it was not fixed; morale at the Sheriff's Department was bad and several deputies were actively looking for employment; Morgan's K-9 had been taken from him in an act of retribution; and portable radio coverage was poor.  Dist. Ct. Dkt. 93-3.

Morgan initially filed a grievance under a labor contract that applied to his position, which he lost.  He then filed this suit in district court asserting claims of retaliation and deprivation of due process, under 42 U.S.C. § 1983, and breach of the labor contract.  The district court compelled arbitration on the breach of the labor contract claim.  The arbitrator ruled in Morgan's favor and reinstated his employment with the Sheriff's Department.

After returning to district court, Robinson filed a motion for summary judgment asserting qualified immunity with respect to Morgan's retaliation claim.  The district court denied the motion, ruling that Robinson was not entitled to qualified immunity

-11-

because there were genuine disputes of material fact concerning the public value of Morgan's statements and whether the statements caused disruption in the operation of the Sheriff's Department. Robinson appeals this decision.

II.

We review de novo the decision of the district court denying qualified immunity. Jones v. McNeese, 675 F.3d 1158, 1161 (8th Cir. 2012). Summary judgment should be granted if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry. The first asks whether the facts, 'taken in the light most favorable to the party asserting the injury, . . . show that the officer's conduct violated a [federal] right[.]'" Tolan v. Cotton, 572 U.S. 650, 655-56 (2014) (alterations in original) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). "The second prong of the qualified immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." Id. at 656. "Courts have discretion to decide the order in which to engage these two prongs. But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." Id. (citation omitted).

With respect to the requirement that we view the facts favorably to the nonmoving party, the Supreme Court has stated:

> This is not a rule specific to qualified immunity; it is simply an application of the more general rule that a "judge's function" at summary judgment is "not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson [v. Liberty Lobby, Inc.], 477 U.S. [242,] 249 [(1986)]. Summary judgment is appropriate only if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. Rule Civ. Proc. 56(a). In making

-12-

that determination, a court must view the evidence "in the light most favorable to the opposing party." Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); see also Anderson, [477 U.S.] at 255.

Id. at 656-57.

Failing to remain faithful to these limits on our review of the facts and instead summarily and improperly weighing the evidence and finding critical facts in the light most favorable to Sheriff Robinson, the majority concludes that Sheriff Robinson terminated Morgan because he could have reasonably believed that Morgan's statements during the 2014 campaign for Sheriff of Washington County would be potentially damaging to and disruptive of the discipline and harmony of the Sheriff's Department. Such a conclusion can only be reached by accepting the Sheriff's post-hoc litigation position and improperly viewing the facts in the light most favorable to the Sheriff.

Contrary to the majority's suggestion that this dissent misstates the record, I do no more than carry out our duty to view the evidence "in the light most favorable" to the party opposing summary judgment, here Deputy Morgan. See Adickes, 398 U.S. at 157. With this mandate in mind, the record shows the following:

- Sheriff Robinson has been Washington County Sheriff since 2000. In July 2013, Morgan notified Robinson that he intended to oppose Robinson in the 2014 primary.

- Morgan has been a full-time Washington County deputy since 2002. In his last performance evaluation prior to the 2014 primary, Morgan was rated as performing at a level meeting or exceeding standards in all areas. Morgan's sergeant described Morgan as a "good example of what a patrol deputy should be, i.e. on time, good public relations, gets along with fellow deputies." Morgan's sergeant signed off on the evaluation on December 30, 2013; Morgan's captain signed off on February 24,

-13-

2014; the chief deputy signed off on February 24, 2014; and Sheriff Robinson signed off on March 30, 2014.

- Robinson won the primary election which was held on May 13, 2014.

- On May 16, 2014, Robinson called a meeting of his command staff to discuss Morgan. The command staff consisted of Patrol Captain Kevin Willis; Chief Deputy Ben Scherer; Captain Phillip Brazelton of the communications center; Lieutenant Shawn Thalas; and Captain Robert Bellamy, the Jail Administrator.

- The command staff recommended Morgan's discharge. These officers testified that they made the recommendation to terminate Morgan because certain public statements made by Morgan during the campaign were critical of the status of the Sheriff's Department, were untrue, misled the public, and revealed Morgan to be untrustworthy.

- Captain Bellamy, who was also Sheriff Robinson's campaign manager, testified that he (Bellamy) was "old school"; that "I don't believe that you bite the hand that feeds you"; and that a deputy should not run against the sitting Sheriff. Dist. Ct. Dkt. 89-2.

- Brian Beckman, Patrol Sergeant in the Sheriff's Department, testified that during the campaign Sheriff Robinson asked him about morale in the Sheriff's Department, and he responded that he "felt morale was good and that to my knowledge, nobody was looking for a job." Dist. Ct. Dkt. 89-8.

- Robinson identified Morgan's campaign statements to which he objected as Morgan's assertions that there was a lack of deputies on the road; the office budget did not consider the public's needs; the County communication center had not been completed; that morale in the Department was poor; that the entire department was not doing well; that rural fire departments lacked adequate

radio systems; and that people had been leaving the office because they didn't feel respected.  Dist. Ct. Dkt. 90.

•   During the campaign, Sheriff Robinson asked three sergeants in the Sheriff's Department about morale; each stated that morale was fine.

•   Morgan's written Termination Notice, dated May 19, 2014, stated that under the "circumstances" Morgan violated rules of conduct pertaining to "obedience to laws and orders," "false statements," "slander[ing] or speak[ing] detrimentally about the office or another employee," and the expectation that "[e]mployees shall always display absolute honesty."  The Termination Notice specified Morgan's campaign statements as violating these rules.  Dist. Ct. Dkt. 93-3.

•   The Arbitrator determined that Morgan's campaign statements were not "outright lies or falsehoods" and his statements "did not demonstrate moral turpitude, his statements were not falsehoods intent upon personal gain and he did not slander or speak detrimentally about the sheriff's office or another employee." Dist. Ct. Dkt. 93-7.

•   "A significant amount of time had passed between at least some of Morgan's statements and his termination . . . yet, Robinson has not alleged that Morgan's statements caused any disruption in that time."  Dist. Ct. Dkt. 103.

•   Neither Robinson nor any other witness has identified any concrete examples of poor morale or department disruption caused by Morgan's statements.

III.

Having established the facts in the summary judgment record, I now turn to the qualified immunity analysis.  In deciding this appeal on the second prong of the

-15-

analysis, and concluding that "at the time of Morgan's termination, the law was not 'sufficiently clear' so that Robinson would have known that terminating him violated his First Amendment rights," Opn. 9, the majority hints that Morgan's campaign speech discussing and criticizing Sheriff Robinson's administration and operation of his department warrants First Amendment protection. I would not be so hesitant and I find that, viewing the facts in the light most favorable to Morgan, Morgan's campaign speech addressed matters of public concern. Even Robinson agrees, conceding that at least some of Morgan's statements so qualify.

"Speech by citizens on matters of public concern lies at the heart of the First Amendment, . . . [and] [t]his remains true when speech concerns information related to or learned through public employment." Lane v. Franks, 573 U.S. 228, 235-36 (2014). Indeed, "[t]here is considerable value . . . in encouraging, rather than inhibiting, speech by public employees [because] '[g]overnment employees are often in the best position to know what ails the agencies for which they work.'" Id. (third alteration in original) (quoting Waters v. Churchill, 511 U.S. 661, 674 (1994)). Where an employee speaks as a citizen on a matter of public concern, "the possibility of a First Amendment claim arises." Garcetti v. Ceballos, 547 U.S. 410, 418 (2006).

I believe, on the summary judgment record, that Deputy Morgan's statements were made as a citizen on a matter of public concern because they "can be fairly considered . . . a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." Snyder v. Phelps, 562 U.S. 443, 453 (2011) (internal quotation marks and citations omitted). Morgan made the statements as part of his political campaign, where "the First Amendment has its fullest and most urgent application[.]" Burson v. Freeman, 504 U.S. 191, 196 (1992) (quoting Eu v. San Francisco Cnty. Democratic Cent. Comm., 489 U.S. 214, 223 (1989)). The statements were critical of the manner in which Robinson performed his duties as Sheriff, and "[s]peech that criticizes a public employer in his capacity as a public official . . . addresses matters of public concern." Belk v. City of Eldon, 228 F.3d

872, 878 (8th Cir. 2000). In addition, the statements were made on Morgan's campaign website, during campaign forums, or published in the newspaper; none were disseminated to a closed audience or reported as a part of Morgan's official job duties. Cf. Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc., 472 U.S. 749, 762 (1985); see also Garcetti, 547 U.S. at 421.

The Court impermissibly makes a key factual finding that Robinson reasonably believed that Morgan's campaign speech was "at least potentially" damaging and disruptive. I conclude, however, that viewing the facts in the light most favorable to Morgan, it was not reasonable for Robinson to so conclude nor was that the reason behind his decision to discharge Morgan.

Undercutting Sheriff Robinson's purported rationale for terminating Morgan is the record evidence—which we must view in the light most favorable to Morgan—demonstrating that Morgan's termination was not actually tied to potential office disruption. Morgan's Termination Notice explained the reasons for his firing as violating the Sheriff's Department's Rules of Conduct by slandering or speaking detrimentally about the office. This charge, which an arbitrator later determined to be unfounded based on the truthfulness of Morgan's statements, is centered more on the disdain that Robinson and others had for Morgan's campaign speech than on any potential disruption that they feared might occur due to Morgan's candidacy. Captain Bellamy, Robinson's campaign manager and member of the "command staff" that recommended Morgan's discharge, openly admitted that he objected to Morgan's campaign because "you don't bite the hand that feeds you" by running against the sitting sheriff, while several others who were involved in the recommendation to terminate Morgan also stated that the recommendation for dismissal was based on Morgan's purported violation of the Code of Conduct by speaking out against the sitting sheriff. Dist. Ct. Dkt. 89-2.

A passing reference to "office disharmony" in a notice of termination and generalized statements about the natural consequences of political elections, in my view, do not overcome the significant evidence showing that Morgan was terminated solely for the content of his campaign speech challenging Robinson's record and calling attention to his view of the status of Sheriff Department operations. Viewing the evidence in the light most favorable to Morgan—which we are bound to do at this juncture—Sheriff Robinson's termination of Morgan was motivated solely by the critical content of Morgan's campaign speech and not by a concern for potential disruption.

Further, no evidence is before the Court of any actual disruption or indicators of poor morale within the Department of any kind or occurring at any time, much less issues created by Morgan's campaign speech. The district court fairly noted that "the evidence presented on this motion establishes that a significant amount of time has passed between at least some of Morgan's statements and his termination. . . . Yet, Robinson has not alleged Morgan's statements caused any disruption in that time." Dist. Ct. Dkt. 103, 8-9. Indeed, Robinson presents no evidence as to the actual impact of Morgan's campaign speech on the efficiency of the Sheriff's Department. Cf. Shockency v. Ramsey Cnty., 493 F.3d 941, 949-50 (8th Cir. 2007) ("Qualified immunity cannot be based on a simple assertion by the employer . . . without supporting evidence of the adverse effect of the speech on workplace efficiency." (alteration in original) (internal quotation marks omitted)); Dunn v. Carroll, 40 F.3d 287, 293 (8th Cir. 1994) ("[I]f the defendants have failed to produce evidence weighing against permitting the employee's expressive conduct, or if there is a question of fact as to whether they reasonably believed the conduct to be disruptive, then the defendants are not entitled to qualified immunity." (citations omitted)).

Robinson and the Court remind us of the Supreme Court's admonition that there is no "necessity for an employer to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest

-18-

before taking action." Connick v. Myers, 461 U.S. 138, 152 (1983). While undoubtedly accurate, this proposition has no application to the facts of this case. In Connick, an assistant district attorney who was resisting an ordered inter-departmental transfer, was *terminated on the same day* that she had created a "mini-insurrection" within the district attorney's office by distributing a survey concerning office policies and grievances, which she had composed, to 15 assistant district attorneys. Id. at 141-42. Here, Robinson terminated Morgan weeks after Robinson's campaign speech had occurred, after the election campaign had concluded and Morgan's campaign speech had come to an end, and in the absence of any examples of deteriorating morale or office disruption. Under the facts before us, Robinson did wait, and unfolding events revealed to Robinson no "disruption of the office and the destruction of working relationships."

Proceeding to the balancing of the "interests of [Morgan], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees," Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968), and viewing the evidence in the light most favorable to Morgan, the district court correctly observed that no facts support the conclusion that Morgan's *past* campaign speech was reasonably likely to cause disharmony or damage morale in the Sheriff's office. Accordingly, because a rational jury could find that Morgan was terminated solely because Robinson was personally offended by Morgan's campaign speech, the Pickering balance falls sharply and overwhelmingly in favor of Morgan's right to comment on matters of public concern. Thus the statements are afforded First Amendment protection and I believe Morgan has sufficiently shown a violation of a protected constitutional right in the form of his termination for engaging in campaign speech. Thus, I easily conclude that Deputy Morgan satisfies the first part of the qualified immunity analysis.

-19-

I also disagree with the majority's analysis and would conclude that it is clearly established that Sheriff Robinson could not terminate Deputy Morgan for exercising his First Amendment rights during the campaign. The majority, despite our directive to view the evidence in the light most favorable to Morgan, frames this inquiry as asking whether Sheriff Robinson could terminate Deputy Morgan for Morgan's campaign statements when Robinson believed the statements were potentially damaging and disruptive. The evidence, particularly when viewed with the applicable summary judgment standard, does not support the majority's formulation of the question as including Sheriff Robinson's belief that Morgan's statements would cause potential disruption. I believe this incorrect framing of the question leads to the majority's erroneous conclusion that the right was not clearly established; I address what I believe the proper inquiry to be: "Could [Robinson] reasonably have believed, at the time he fired [Morgan], that a government employer could fire an employee on account of" the employee exercising his First Amendment right to free speech during a run for political office where that speech had no disruptive impact on office functioning? Cf. Lane, 573 U.S. at 243. In my view, the answer to this question is an unequivocal "no."

In Bearden v. Lemon—a case we ultimately decided on jurisdictional grounds—we commented that "[t]he right not to be terminated for [exercising one's right to free] speech has been clearly established for some time." 475 F.3d 926, 929 (8th Cir. 2007). In support of this statement, we cited Hartman v. Moore, 547 U.S. 250, 256 (2006) ("[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out . . . ."), and Rankin v. McPherson, 483 U.S. 378, 383 (1987) ("It is clearly established that a State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech.").

As the Supreme Court has recently emphasized, general statements of the law may, in some circumstances, "giv[e] fair and clear warning" to government officials

-20-

where the unlawfulness of the challenged action is readily apparent in light of pre-existing law.  White v. Pauly, 137 S. Ct. 548, 552 (2017) (quoting United States v. Lanier, 520 U.S. 259, 271 (1997)).

No one disputes that "political speech . . . is central to the meaning and purposes of the First Amendment," Citizens United v. FEC, 558 U.S. 310, 329 (2010), or that "the First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office."  Burson, 504 U.S. at 196 (quoting Eu, 489 U.S. at 223).  For this reason, "the [Supreme] Court has frequently reaffirmed that speech on public issues occupies the 'highest rung of the h[ie]rarchy of First Amendment values,' and is entitled to special protection." Connick, 461 U.S. at 145 (quoting NAACP v. Claiborne Hardware Co., 458 U.S. 886, 913 (1982)). Indeed, this is the very foundation upon which the Supreme Court decided Pickering:

> What we do have before us is a case in which a teacher has made erroneous public statements upon issues then currently the subject of public attention, which are critical of his ultimate employer but which are neither shown nor can be presumed to have in any way either impeded the teacher's proper performance of his daily duties in the classroom or to have interfered with the regular operation of the schools generally.  In these circumstances we conclude that the interest of the school administration in limiting teachers' opportunities to contribute to public debate is not significantly greater than its interest in limiting a similar contribution by any member of the general public.

391 U.S. at 572-73.

Therefore, public officials have been on notice since the Court decided Pickering in 1968 that they may not sanction an employee for uttering protected speech when that speech neither impacts the employee's official duties nor detracts from office efficiency.  This is all the more true given the context in which Morgan spoke here: a political campaign, where "the First Amendment has its fullest and most

-21-

urgent application." Burson, 504 U.S. at 196 (quoting Eu, 489 U.S. at 223). And although I acknowledge "that in many free speech cases the outcome of the Pickering balancing test would be unclear to a reasonable official[,]" Sexton v. Martin, 210 F.3d 905, 914 (8th Cir. 2000), I cannot conclude that this is one such case. Indeed, this is the very point that our Court recognized in Sexton, where then-District Judge Melloy, joined by Circuit Judges Richard Arnold and Hansen, concluded that the law could be clearly established where the Pickering balance weighed so heavily in the employees' favor:

> [W]here the employees have spoken out on a matter of great public concern, and the evidence that the speech caused disruption in the workplace is minimal at best, the imprecision of the Pickering balance makes little difference in our determination. We conclude that at the time of the plaintiffs' termination, the law was clearly established that the balance would have weighed heavily in favor of the plaintiffs' exercise of free speech.

Id.

In my view, it is clearly established that a public employee cannot be terminated for making protected statements during a campaign for public office where that speech has no demonstrated impact on the efficiency of office operations. Cf. Smith v. Gilchrist, 749 F.3d 302, 313 (4th Cir. 2014) ("In sum, a reasonable DA in Gilchrist's position would have known that he could not fire an ADA running for public office for speaking publicly in his capacity as a candidate on matters of public concern.").

In concluding that the right is not clearly established, the majority looks no further than Nord v. Walsh, 757 F.3d 734 (8th Cir. 2014). But the majority diminishes critical distinctions in Nord, namely that the nature and contents of the statements in Nord challenged the personal fitness of the sheriff. That the sheriff's

departments in <u>Nord</u> and in this case function similarly does nothing to address the fact I find dispositive: Morgan spoke out about issues related to department operations as a whole, while the deputy in <u>Nord</u> attacked the sheriff's personal attributes and fitness for office. Further distinguishing <u>Nord</u> is that the sheriff relied on advice of human resources and legal counsel, which factored into the reasonableness of his belief that he could terminate the deputy for speech during the political campaign. Finally, to bolster its view that it is not clearly established that Robinson could not terminate Morgan for his political speech during the campaign, the majority offers several cases discussing the permissibility of limiting the speech of department employees for the purposes of managing the department. But those cases do not involve the context of political elections, where "the First Amendment has its fullest and most urgent application." <u>Burson</u>, 504 U.S. at 196 (quoting <u>Eu</u>, 489 U.S. at 223).

The Supreme Court has repeatedly expressed the importance of protecting First Amendment activity, especially in the context of elections. The majority's conclusion, which relies on a factually distinguishable case, sidesteps this precedent. I would conclude that it is clearly established that Sheriff Robinson could not terminate Deputy Morgan for speech made during a political campaign that related to the department operations and caused no disruption or other negative impact on the department.

IV.

In closing, I note the reality of small-county politics that the majority is so willing to cast aside. Although I dissent because I believe Deputy Morgan has shown a violation of a clearly established constitutional right, I believe discussion of the practical implications of today's majority opinion is warranted. Washington County is a rural Nebraska county with a population of approximately 20,000 people and a Sheriff's Department of 13 road deputies. Washington County is not a major

-23-

metropolitan area or population center; it is small and rural. And small-county politics differ from politics in major metropolitan areas like Kansas City, St. Louis, or Minneapolis. The population and workforce in less-populated areas do not provide the same pool of candidates with vast differences in background and experience. Office holders are often entrenched incumbents; indeed, Sheriff Robinson has held the position of Washington County Sheriff since 2000. Typically, the deepest pool for political challengers comes from within a department or organization itself. This necessarily involves department- or organization-born challengers to incumbents. After today's majority opinion, in-office challengers to incumbents must appreciate the risk that comes with critical campaign speech: the incumbent can terminate them for the critical speech without the reasonable belief that the speech would be potentially damaging or disruptive to the office. Viewing the record under our summary judgment standard, Sheriff Robinson terminated Deputy Morgan because he did not like the critical content of Deputy Morgan's speech; Sheriff Robinson had no reasonable basis to believe that the speech would be potentially damaging or disruptive to the functions of the Sheriff's Department. Because I cannot sanction shielding Robinson from suit for such an act, I dissent. I would affirm the judgment of the district court.

———————————————