# United States Court of Appeals

### For the Eighth Circuit

_____

No. 18-1537

_____

N.S., Only child of decedent, Ryan Stokes, by and through her natural mother and next friend, Brittany Lee; Narene James

*Plaintiffs - Appellees*

v.

Kansas City Board of Police Commissioners; Michael Rader; Leland Shurin; Angela Wasson-Hunt; Alvin Brooks; Mayor Sly James; David Kenner

*Defendant*s

William Thompson

*Defendant - Appellant*

Darryl Forte

*Defendant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: April 16, 2019
Filed: August 12, 2019

_____

Before LOKEN, WOLLMAN, and STRAS, Circuit Judges.

_____

STRAS, Circuit Judge.

Officer William Thompson shot and killed Ryan Stokes during a police chase. The district court ruled that Thompson was not entitled to official or qualified immunity. We vacate and remand for reconsideration.

I.

While on patrol early one morning, Thompson and his partner received a radio message that other officers were pursuing two men suspected of theft. Just seconds later, Thompson spotted Stokes, who matched the description of one of the suspects, running into a parking lot. Stokes headed toward the driver's side of a parked car and briefly opened the door. He then quickly turned and moved in the direction of a pursuing officer, who by that point was "very close" to him. Thompson fired at Stokes three times, hitting him twice in the back. Stokes died shortly thereafter.

Beyond these basic facts, the parties' accounts differ. Thompson claims that he saw Stokes with a gun when he entered the parking lot and believed that he intended to ambush the pursuing officer. Stokes's family argues that Stokes never possessed a gun and was attempting to surrender when he was shot. The parties also dispute whether Thompson said anything to Stokes before firing.

Some evidence supports Thompson's account. The police discovered a handgun on the driver's seat of the car, which could mean that Stokes was armed when he entered the parking lot but then tossed the gun into the car. And witnesses who saw Stokes running said that he appeared to be "holding up his pants as he ran," which is arguably consistent with Thompson's perception that Stokes was holding a gun. Finally, Thompson's partner claims to have heard Thompson order Stokes to "get on the ground."

Other evidence supports the family's account. No one besides Thompson observed Stokes with a gun, nor was any gun found on or near his body. The car's owner, who was Stokes's friend, claimed that the gun recovered from the car belonged to him and that it had been there all night. Moreover, some officers did not recall hearing Thompson shout anything during the encounter, and at least one officer thought Stokes was trying to surrender when Thompson shot him.

Stokes's family sued Thompson for excessive force, *see* 42 U.S.C. § 1983, and wrongful death, *see* Mo. Rev. Stat. § 537.080. Thompson moved for summary judgment, claiming qualified immunity from the federal claim and official immunity from the state claim. In its order, the court recounted the parties' general allegations and then denied both forms of immunity.

## II.

Cases in which a district court denies qualified immunity at the summary-judgment stage typically follow one of two paths on appeal. First, we may affirm, but only when it is apparent that, if the plaintiff's version of the facts is right, the officer violated a clearly established right. *See Raines v. Counseling Assocs., Inc.*, 883 F.3d 1071, 1074 (8th Cir. 2018). Second, we may reverse because, even under the plaintiff-friendly version of the facts, there was no constitutional violation or the underlying right was not clearly established. *See id.* ("We have authority to decide the purely legal issue of whether the facts alleged by the plaintiff are a violation of clearly established law." (brackets and citation omitted)). This case falls into a third category.

Here, the district court fell short in its threshold duty to make "a thorough determination of [Thompson's] claim of qualified immunity." *Robbins v. Becker*, 715 F.3d 691, 694–95 (8th Cir. 2013) (citation omitted). In its summary-judgment order, the court did little more than summarize the parties' allegations and decide that the combination of a "*general* . . . right to be free from excessive force" and the

-3-

presence of "genuine issues of material fact[]" precluded summary judgment. (Emphasis added).

Yet the Supreme Court has warned courts not to "define clearly established law at [such] a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (citation omitted); *see also City of Escondido v. Emmons*, 139 S. Ct. 500, 502–04 (2019) (per curiam). Although there need not be "a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question *beyond debate*," or else "officers are entitled to qualified immunity." *Kisela*, 138 S. Ct. at 1152–53 (emphasis added) (citations omitted). "[O]utside [of] an obvious case," the Court has explained, it is not enough "to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness." *Id.* at 1153 (internal quotation marks and citation omitted).

The district court did no more than that here, so the case needs to go back for a second look.[1] *See Robbins*, 715 F.3d at 694–95. On remand, the court should begin by specifically identifying the plaintiff-friendly version of the disputed facts, rather than, as it did before, simply reciting the parties' general allegations. *See id.*; *cf. Kisela*, 138 S. Ct. at 1152–53 ("Use of excessive force is an area of the law in which the result depends very much on the facts of each case . . . ." (internal

---

[1]The district court made at least two other errors in its summary-judgment order. First, it was mistaken in its belief that it had to decide whether Thompson's actions amounted to a constitutional violation before it could address whether the underlying right was clearly established. Although addressing the steps in this order was once mandatory, *see Saucier v. Katz*, 533 U.S. 194, 200–01 (2001), it is not any longer, *see Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Second, it suggested that if Stokes *subjectively* believed that he was not fleeing from the officers, then Thompson should not have concluded that he was resisting arrest. Even assuming that this is a provable fact, it is completely irrelevant to the qualified-immunity analysis, which considers only the facts actually available to the officer at the time. *See Hernandez v. Mesa*, 137 S. Ct. 2003, 2007 (2017) (per curiam).

quotation marks and citation omitted)). It must then evaluate whether Thompson, in light of all of the information available to him at the moment, violated clearly established law when he shot Stokes. *See Kisela*, 138 S. Ct. at 1152–53; *Hernandez v. Mesa*, 137 S. Ct. 2003, 2007 (2017) (per curiam). Only if the answer is "yes" may the court once again deny qualified immunity.

## III.

We also remand for reconsideration of Thompson's claim to official immunity. Official immunity, like qualified immunity, is a threshold issue and subject to interlocutory appellate review. *See Div. of Emp't Sec. v. Bd. of Police Comm'rs*, 864 F.3d 974, 978 (8th Cir. 2017); *cf. State ex rel. Barthelette v. Sanders*, 756 S.W.2d 536, 539 (Mo. banc 1988); *State ex rel. Mo. Dep't of Agric. v. McHenry*, 687 S.W.2d 178, 181 (Mo. banc 1985). But the similarities largely end there.

Official immunity, for example, is available unless the officer acted "in bad faith or with malice," which requires "more than [just] bad judgment or negligence." *Wealot v. Brooks*, 865 F.3d 1119, 1129 (8th Cir. 2017) (citations omitted). Qualified immunity, on the other hand, asks a different question: were the officer's actions "unreasonable" under clearly established law? *See id.* at 1125–28. Different questions can produce different answers. *See, e.g.*, *id.* at 1125–29 (holding that officers were entitled to official but not qualified immunity).

Yet the district court treated the two inquiries as interchangeable, explaining that "[t]he same factual disputes as to whether . . . Stokes posed a threat[] or resisted arrest preclude[d it] from determining if . . . Thompson acted maliciously in his use of force." In fact, nowhere did the court say which facts would allow a reasonable jury to "conclude [that Thompson] acted with malice or in bad faith." *Id.* at 1129; *cf. Schmidt v. City of Bella Villa*, 557 F.3d 564, 575 (8th Cir. 2009) (noting that neither "innuendo regarding [a defendant's] mindset" nor "speculation and conjecture" can defeat official immunity). Though the facts may justify denying

both kinds of immunity in some cases, *see, e.g.*, *Div. of Emp't Sec.*, 864 F.3d at 979–80, the analysis is too cursory for us to say whether they do here.

## IV.

We accordingly vacate the district court's decision and remand for reconsideration of Thompson's motion for summary judgment.

———————————————