# United States Court of Appeals

## For the Eighth Circuit

_____

No. 20-1526

_____

N.S., Only child of decedent, Ryan Stokes, by and through her natural mother and next friend, Brittany Lee; Narene James

*Plaintiffs - Appellants*

v.

Kansas City Board of Police Commissioners; Michael Rader; Leland Shurin; Angela Wasson-Hunt; Alvin Brooks; Mayor Sly James

*Defendants - Appellees*

David Kenner

*Defendant*

William Thompson; Darryl Forte, in his individual capacity; Richard Smith, in his official capacity as Chief of Police of the Kansas City, MO Police Department

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: December 14, 2021
Filed: May 31, 2022

_____

Before LOKEN, ARNOLD, and STRAS, Circuit Judges.
_____

STRAS, Circuit Judge.

Kansas City Police Officer William Thompson shot and killed Ryan Stokes during a foot chase. Despite the tragic circumstances, the district court[1] concluded that Officer Thompson was entitled to both qualified and official immunity. We affirm.

I.

We have seen this case before. The last time, we remanded to allow the district court to "specifically identify[] the plaintiff-friendly version of the disputed facts" and "evaluate whether [Officer] Thompson, in light of all of the information available to him at the moment, violated clearly established law when he shot Stokes." *N.S. v. Kan. City Bd. of Police Comm'rs*, 933 F.3d 967, 970 (8th Cir. 2019). And then we instructed the court to use those same plaintiff-friendly facts to determine whether he was entitled to official immunity under Missouri law. *Id.* at 970–71.

Rather than denying qualified immunity, as it had done before, the district court determined that there had been no constitutional violation at all, clearly established or otherwise. Its conclusion on official immunity was similar: Officer Thompson had been negligent at most, meaning that Stokes's family could not recover for wrongful death. *See Wealot v. Brooks*, 865 F.3d 1119, 1129 (8th Cir. 2017) (describing Missouri's official-immunity doctrine).

_____

[1]The Honorable Brian C. Wimes, United States District Judge for the Western District of Missouri.

-2-

Now the plaintiffs have appealed. In addition to contesting the grant of summary judgment to Officer Thompson, Stokes's family argues that they should receive a trial on their claims against the Kansas City Board of Police Commissioners and the other municipal officials named in their complaint. *See Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658 (1978).

## II.

We review the district court's decision to grant summary judgment de novo, viewing the record in the light most favorable to Stokes's family and drawing all reasonable inferences in their favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *McManemy v. Tierney*, 970 F.3d 1034, 1037 (8th Cir. 2020). In the immunity context, this standard requires us to evaluate the evidence using the plaintiff-friendly version of the facts identified by the district court. *See N.S.*, 933 F.3d at 970.

We then have to determine whether the defendants are entitled to judgment as a matter of law. *See Phillips v. Mathews*, 547 F.3d 905, 909 (8th Cir. 2008). If they are, we will affirm the grant of summary judgment. *See Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment."). If not, the case goes on.

## A.

Seconds after receiving a police dispatch about a suspected cellphone theft and an ensuing foot chase, Officer Thompson saw Stokes run into a parking lot. His destination was a red car, and once he reached it, he opened and shut the driver's

side door.[2]  He then turned to face the officer who had been chasing him.  What happened next is hotly disputed, but the family's side of the story is what matters at this point.

Officer Thompson, who was standing behind Stokes at the time, saw him raise his hands to his waist.  Misinterpreting the gesture as threatening, Officer Thompson fired without warning at Stokes, who was trying to surrender.  Stokes later died from his injuries.

Although a search revealed a gun in the car, the car's owner said that it had been in there all night.  So even if Officer Thompson insists that he saw a gun in Stokes's hand during the chase, we must assume that he did not have one.  *See N.S.*, 933 F.3d at 969.

B.

Applying these plaintiff-friendly facts, our task now is to evaluate the family's excessive-force claim against Officer Thompson.  *See* 42 U.S.C. § 1983.  The key issue is whether he is entitled to qualified immunity, which depends on how we answer two questions.  First, did his actions violate a constitutional right?  Second, was the right clearly established?  *See Morgan v. Robinson*, 920 F.3d 521, 523 (8th Cir. 2019) (en banc).  If the answer to either question is no, Officer Thompson gets immunity.  *See id.* (explaining that we may answer these questions in either order).

---

[2]We acknowledge the family's attorney treated this fact as disputed at oral argument.  But this position appears to be a late-breaking change: the family's appellate brief assumes it to be true, and it was never contested before the district court.  Appellant's Br. 19; *see Cole v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 533 F.3d 932, 936 (8th Cir. 2008) ("[A] party cannot assert arguments that were not presented to the district court in opposing summary judgment in an appeal contesting an adverse grant of summary judgment").

We can skip directly to the second question. The Supreme Court has explained that "the focus" of the clearly-established-right inquiry "is on whether the officer had fair notice that [his] conduct was unlawful." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)). Here, "judged against the backdrop of the law at the time of the conduct," a reasonable officer would not have had "fair notice" that shooting Stokes in these circumstances violated the Fourth Amendment. *Id.* (quoting *Brosseau*, 543 U.S. at 198).

Central to our conclusion is *Thompson v. Hubbard*, 257 F.3d 896, 898 (8th Cir. 2001), which involved "a report of shots fired and two suspects fleeing on foot from the scene of an armed robbery." One of the suspects climbed over a short fence and fell to the ground. *Id.* When he stood up, he "looked over his shoulder at [an officer], and moved his arms as though reaching for a weapon at waist level." *Id.* When the suspect's arms continued to move despite an order to "stop," the officer fired a single shot into the suspect's back and killed him. *Id.* No weapon was found. *Id.*

Even so, we concluded that the officer's "use of force . . . was within the bounds of the Fourth Amendment." *Id.* at 899. Critical to our decision was the idea that "[a]n officer is not constitutionally required to wait until he sets eyes upon the weapon before employing deadly force to protect himself against a fleeing suspect who turns and moves as though to draw a gun." *Id.*

Even under the plaintiff-friendly version of the facts, Officer Thompson faced a similar choice here: use deadly force or face the possibility that Stokes might shoot a fellow officer. And just like in *Hubbard*, Officer Thompson could only see the suspect from behind, which obscured his view and required a "split-second judgment[]—in circumstances that [we]re tense, uncertain, and rapidly evolving." *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)).

It is true that there are some differences here. For one thing, the suspect in *Hubbard* was fleeing from the scene of an armed robbery, *id.* at 898, a much more serious crime than stealing a cell phone. For another, Officer Thompson remained silent in the face of possible danger, whereas the officer in *Hubbard* shouted "stop" before using deadly force. Despite these differences, a reasonable officer in *these* circumstances "might not have known for certain that [his] conduct was unlawful," particularly given that Stokes had just accessed the inside of an unknown vehicle before raising his hands. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017). This uncertainty, a by-product of *Hubbard*, means that Officer Thompson did not violate a *clearly established* right. *See Kisela*, 138 S. Ct. at 1152.

C.

None of the cases discussed by the family are any closer than *Hubbard*. *Tennessee v. Garner*, 471 U.S. 1, 4 & n.2 (1985), for example, did not involve the same level of potential danger because the minor suspect in that case was busy climbing a fence when an officer shot him. In another case, *Nance v. Sammis*, 586 F.3d 604, 607 (8th Cir. 2009), plain-clothed officers confronted two *children* after dark who were *walking* toward an apartment complex. They shot one of them without warning after seeing what turned out to be a toy gun in the child's waistband—a different situation than we have here. *Id.* Finally, *Ngo v. Storlie*, 495 F.3d 597, 600–01 (8th Cir. 2007), involved an officer-on-officer shooting, not an officer who fired at a fleeing suspect.

At most, these cases would create uncertainty for someone in Officer Thompson's shoes. To prevail, however, the family had to establish that "the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Kisela*, 138 S. Ct. at 1153 (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014)). "Existing precedent," in other words, "must have placed the statutory or constitutional question beyond

debate." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011).  In light of *Hubbard*, it did not.

Nor has the family shown that Officer Thompson acted "in bad faith or with malice."  *Wealot*, 865 F.3d at 1129 (quoting *Blue v. Harrah's N. Kan. City, LLC*, 170 S.W.3d 466, 479 (Mo. Ct. App. 2005)).  Official immunity shields Missouri police officers from liability for their discretionary decisions, including when they "draw[] and fire[] a weapon," even if they are negligent.  *Seiner v. Drenon*, 304 F.3d 810, 813 (8th Cir. 2002).  But immunity ends where bad faith or malice begins.  *See Blue*, 170 S.W.3d at 479.

Both are forms of "wrongful intent."  *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 447 (Mo. banc 1986).  The former requires "a dishonest purpose, moral obliquity, conscious wrongdoing, [or] breach of a known duty through some ulterior motive."  *Id.* (quotation marks omitted).  And the latter involves actions that are "so reckless or wantonly and willfully in disregard of one's rights that a trier of fact could infer from such conduct bad faith or [an] improper or wrongful motive."  *Id.* (quotation marks omitted).

There is no evidence of either here.  Nothing suggests, for example, that Officer Thompson was retaliating against Stokes for something that happened earlier or that they had a pre-existing relationship.  *See Wealot*, 865 F.3d at 1129 (examining the officers' prior "treatment" of the plaintiff); *Twiehaus*, 706 S.W.2d at 448–49 (considering what the defendant knew about decedent's prior suicide attempts).  By their own account, the family's best evidence of wrongful intent is that the gun may have been moved from a holster to the driver's side seat.  The problem with this theory, however, is that there is no evidence that *Officer Thompson* was the one who moved it.  As we have explained before, "speculation and conjecture are insufficient

to defeat summary judgment." *See Gannon, Int'l, Ltd. v. Blocker*, 684 F.3d 785, 794 (8th Cir. 2012).

## IV.

Nor is there enough to find the municipal defendants liable under a deliberate-indifference theory. *See Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). The family's argument is that the "Hot Spots" program, which allows non-patrol officers to occasionally work the streets, and the lack of specific foot-pursuit training, amounted to a "deliberate or conscious choice" to ignore public safety. *Parrish v. Ball*, 594 F.3d 993, 997, 1002 (8th Cir. 2010) (explaining the requirements for this type of claim).

To survive summary judgment, the family had to offer evidence that the municipal defendants "had notice that [these] procedures were inadequate and likely to result in" a constitutional violation. *Id.* at 998 (quotation marks omitted). On this point, the family has nothing linking either policy to any other incident involving the use of excessive force. *See Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1216 (8th Cir. 2013) (holding that the "single incident" of excessive force in *that* case did not give rise to municipal liability). Without notice, there can be no deliberate indifference. *See id.* ("Notice is the touchstone of deliberate indifference in the context of § 1983 municipal liability.").

## V.

We accordingly affirm the judgment of the district court.

_____