# SUPREME COURT OF THE UNITED STATES

N. S., ONLY CHILD OF DECEDENT, RYAN STOKES, BY AND THROUGH HER NATURAL MOTHER AND NEXT FRIEND, BRITTANY LEE, ET AL. *v.* KANSAS CITY BOARD OF POLICE COMMISSIONERS, ET AL.

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

No. 22–556.   Decided June 30, 2023

The petition for a writ of certiorari is denied.

JUSTICE SOTOMAYOR, dissenting from the denial of certiorari.

The evidence in this case, taken in the light required at this stage of litigation, tells a disturbing story. Ryan Stokes was an unarmed Black man in the process of surrendering to the police when Officer Thompson, without warning, shot him in the back and killed him. Stokes was only suspected of cell phone theft, there had been no reports he was violent or threatening, and the unarmed Stokes was peacefully surrendering to a different officer after a brief foot chase. This arresting officer, Officer Straub, had already holstered his gun because he could tell that Stokes did not present a risk. Indeed, Stokes was facing Straub and lifting his hands to surrender. Straub was therefore "shocked" when, without any warning, Stokes was shot from behind by Thompson. App. in No. 20–1526 (CA8), p. 2058.

Stokes' daughter sued over her father's killing and sought a jury trial. The Court of Appeals for the Eighth Circuit, however, ensured that this case never made it to a jury. At the summary judgment stage, the court granted Thompson qualified immunity on the ground that it was not clearly established that Thompson had used excessive force when he shot and killed Stokes. The court reached this result

through a two-step that is all too familiar.

First, the Eighth Circuit improperly drew factual inferences in the police officer's favor. It is the jury's role to decide factual disputes over what happened and draw factual inferences from the evidence presented. Summary judgment deprives the jury of this crucial role, and thus "is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan* v. *Cotton*, 572 U. S. 650, 656–657 (2014) (*per curiam*) (quoting Fed. Rule Civ. Proc. 56(a)). In assessing whether summary judgment is warranted, "a court must view the evidence in the light most favorable to the opposing party" and "adhere to the fundamental principle that at the summary judgment stage, reasonable inferences should be drawn in favor of the nonmoving party." *Tolan*, 572 U. S., at 657, 660 (internal quotation marks omitted). This ensures that it is a jury that will hear evidence and determine which story is credible, not a judge reading a paper record. This role of the jury is particularly important in qualified immunity cases, where the stakes are not just about the parties involved, but whether there will be accountability when public officials violate the Constitution. Cf. *Taylor* v. *Louisiana*, 419 U. S. 522, 530 (1975) (the jury represents "the . . . judgment of the community").

Here, however, the Eighth Circuit did not follow this well-settled law. In this case, as in many qualified immunity cases, a key question at summary judgment was whether, resolving factual disputes in favor of Stokes' daughter, "a jury could reasonably infer that [Stokes' actions], in context, did not amount" to a threat that he would "inflict harm" on Straub. *Tolan*, 572 U. S., at 658. Yet in answering this question and in setting out the version of the facts most favorable to Stokes' daughter, the Eighth Circuit failed to draw all factual inferences in the daughter's favor.

To be sure, the court below correctly acknowledged that

the evidence showed the following when taking the daughter's version of disputed facts: Stokes never had a gun, he was lifting his hands to surrender, and Thompson "fired without warning." 35 F. 4th 1111, 1113–1114 (2022). The Eighth Circuit then departed from the proper approach, however, when it somehow concluded that even viewing this evidence in the light most favorable to Stokes' daughter, Thompson "faced a . . . choice here: use deadly force or face the possibility that Stokes might shoot a fellow officer." *Id.*, at 1114. The court drew this inference from two facts: First, Stokes was raising his hands (while surrendering to Straub) with his back turned toward Thompson; and second, prior to surrendering, Stokes had briefly opened and then closed the door to his friend's car.

Yet even assuming an inference of danger could reasonably be drawn in Thompson's favor (which is debatable), drawing such an inference here would still be inconsistent with "the fundamental principle" that "reasonable inferences should be drawn in favor" of Stokes' daughter. *Tolan*, 572 U. S., at 660. A jury could instead infer that an officer in Thompson's position did not have an objective reason to fear imminent violence from Stokes because: (1) no gun was seen; (2) there was no reason to suspect Stokes was violent, much less prepared to kill a police officer; (3) opening the car door could have multiple nonthreatening explanations, including hiding a stolen cell phone; and (4) Stokes was unwarned, not disobeying any orders, and his actions showed he was surrendering. A reasonable juror could have similarly placed greater weight on the facts that tended toward showing that Stokes' actions, even from Thompson's vantage point, were harmless. In other words, "[a] jury could well have concluded that a reasonable officer would have [seen Stokes' actions] not as a threat" of imminent deadly violence, but as what they were: the actions of an unarmed man surrendering to the police. *Id.*, at 659. The court below may have disagreed with that inference, but it was the

jury's to make.

Second, the Eighth Circuit compounded this error through its analysis of whether Thompson had violated Stokes' clearly established rights. This Court has clearly established that an officer cannot use deadly force against an unarmed suspect who is not behaving violently and does not pose an immediate risk of serious physical injury or death to others. See *Tennessee* v. *Garner*, 471 U. S. 1, 9–12 (1985). Indeed, in *Garner* the suspect was at least refusing to follow a direct order, *id.*, at 4, while here Stokes was peaceably surrendering. Circuit precedent only further established that officers cannot, without warning and without an objective suspicion of imminent violence, shoot unarmed people who are not resisting arrest. See *Nance* v. *Sammis*, 586 F. 3d 604, 610–611 (CA8 2009); *Ngo* v. *Storlie*, 495 F. 3d 597, 599–601, 603–605 (CA8 2007).

The court below dodged this precedent by identifying immaterial differences between the facts of cases. Yet factually identical cases are not required for law to be clearly established. See, *e.g.*, *Hope* v. *Pelzer*, 536 U. S. 730, 739 (2002). The evidence here, when properly interpreted at this stage, matches the key holdings of those cases about the use of lethal force against unarmed, unwarned people who do not pose a danger to others.

Instead, the Eighth Circuit analogized the facts here to a case involving "an armed robbery," "a report of shots fired," and an officer ordering the suspect to stop before firing. *Thompson* v. *Hubbard*, 257 F. 3d 896, 898 (CA8 2001). This analogy was "[c]entral" to the court's "conclusion." 35 F. 4th, at 1114. Had the Eighth Circuit drawn the proper inferences in the daughter's favor, it simply could not have plausibly concluded as a matter of law that "Officer Thompson faced a similar choice here." *Ibid.*

These dual mistakes—resolving factual disputes or drawing inferences in favor of the police, then using those inferences to distinguish otherwise governing precedent—have

become the calling card of many courts' qualified immunity jurisprudence. See, *e.g.*, *Lombardo* v. *St. Louis*, 600 U. S. \_\_\_, \_\_\_–\_\_\_ (2023) (SOTOMAYOR, J., dissenting from denial of certiorari) (slip op., at 2–4); *Ramirez* v. *Guadarrama*, 597 U. S. \_\_\_, \_\_\_–\_\_\_ (2022) (SOTOMAYOR, J., dissenting from denial of certiorari) (slip op., at 2–3); *James* v. *Bartelt*, 595 U. S. \_\_\_, \_\_\_–\_\_\_ (2021) (SOTOMAYOR, J., dissenting from denial of certiorari) (slip op., at 1–2); *Kisela* v. *Hughes*, 584 U. S. \_\_\_, \_\_\_, \_\_\_ (2018) (SOTOMAYOR, J., dissenting) (slip op., at 2, 13); *Mullenix* v. *Luna*, 577 U. S. 7, 23–25 (2015) (SOTOMAYOR, J., dissenting).

The result is that a purportedly "qualified" immunity becomes an absolute shield for unjustified killings, serious bodily harm, and other grave constitutional violations. Officers are told "that they can shoot first and think later," because a court will find some detail to excuse their conduct after the fact. *Kisela*, 584 U. S., at \_\_\_ (SOTOMAYOR, J., dissenting) (slip op., at 15). The public is told "that palpably unreasonable conduct will go unpunished." *Ibid.* And surviving family members like Stokes' daughter are told that their losses are not worthy of remedy. I would summarily reverse the court below to break this trend. It is time to restore some reason to a doctrine that is becoming increasingly unreasonable. If this Court is unwilling to do so, then it should reexamine its judge-made doctrine of qualified immunity writ large.