# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-1882

_____

Marcus D. Evans

*Plaintiff - Appellee*

v.

Lorenetta Smith, Sergeant, Varner Unit, ADC; Telicia Mothershed; Marquis Taylor, Corporal, Verner Unit, ADC (Originally named as "M Taylor")

*Defendants - Appellants*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central

_____

Submitted: April 16, 2025
Filed: August 22, 2025

_____

Before SMITH, SHEPHERD, and KOBES, Circuit Judges.

_____

SMITH, Circuit Judge.

Marcus D. Evans, an inmate in the Varner Supermax Unit of the Arkansas Division of Correction (ADC), filed suit under 42 U.S.C. § 1983 for excessive force against ADC correctional officers after they left him in leg restraints for 15 hours

after returning him to his cell.[1] The officers moved for summary judgment, asserting qualified immunity. The district court[2] denied the officers' motion, concluding that they were not entitled to qualified immunity. Specifically, the court determined that sufficient case law existed to put the officers "on notice that leaving an inmate in restraints for 15 hours or more after heated arguments between the [officers] and the inmate resulting in threats of harm to the inmate by the [officers] when there is no penological need for restraint could violate the Eighth Amendment." R. Doc. 106, at 5. In this interlocutory appeal, the officers argue that the district court erred in denying them qualified immunity for two reasons: (1) Evans failed to prove a constitutional violation because the officers neither used force against him nor injured him, and (2) the law was not clearly established that leaving an already restrained inmate in those restraints can constitute excessive use of force. We disagree and affirm.

## I. *Background*[3]

Evans was scheduled to attend a program designed to prepare maximum-security prisoners in the Varner Supermax Unit for housing in general population. Varner Supermax policy required that Evans be escorted to the program in full restraints, which included hand restraints and leg restraints connected by a tether.

---

[1]Evans also brought a conditions-of-confinement claim, but summary judgment was granted in favor of the officers on that claim. It is not at issue in this appeal.

[2]The Honorable Kristine G. Baker, Chief Judge, United States District Court for the Eastern District of Arkansas.

[3]We view the facts in the light most favorable to Evans. *See Sterling v. Bd. of Trs. of Univ. of Ark.*, 42 F.4th 901, 904 (8th Cir. 2022) (noting that on appeal from denial of qualified immunity, we view the facts in the light most favorable to the non-movant).

At 7:00 a.m. on the day of the program, Sergeant Telicia Mothershed came to Evans's single-occupancy cell. She placed him in full restraints and escorted him to the program. Throughout the program's duration, Evans remained in the restraints.

At 9:00 a.m., Sergeant Lorenetta Smith and Corporal Marquis Taylor escorted Evans back to his cell. After Sergeant Smith and Corporal Taylor placed Evans in his cell, Corporal Taylor removed Evans's hand restraints. Once Corporal Taylor removed the hands restraints, Evans "notified [Corporal Taylor] to take the leg restraints off. He refused to take them off." R. Doc. 87-1, at 5; *see also id.* (indicating that "*they* refused to take them off" (emphasis added)). An argument then ensued about the leg restraints. Corporal Taylor told Evans "just stay in them." *Id.* Evans claims that Sergeant Smith and Corporal Taylor "intentionally left him in leg restraints" because of "several previous altercations between the parties." R. Doc. 103, at 1–2. He maintains that during these previous disputes, Sergeant Smith and Corporal Taylor had "threatened to harm him." *Id.* at 2.

After Sergeant Smith and Corporal Taylor left, Evans "call[ed] out" to have his leg restraints removed. R. Doc. 87-1, at 6. Sergeant Mothershed, who was nearby, "told [Evans], I ain't the one that put you back in your cell." *Id.* As with Sergeant Smith and Corporal Taylor, Evans also had argued previously with Sergeant Mothershed. According to Evans, she had "threatened to harm him" during these previous arguments. R. Doc. 103, at 2.

Evans remained in leg restraints in his cell for the next 15 hours. *See id.* at 5 (stating that Evans "was in the leg restraints in his cell from about nine or ten in the morning . . . until around 11:50 PM"). For a majority of this time, Evans "st[ood] at the [cell] door trying to get the officers to remove the leg restraints." R. Doc. 87-1, at 6. Around lunchtime, Evans located another officer and asked her to call someone to remove his leg restraints. That officer called Sergeants Mothershed and Smith on

the radio and then departed. Shortly thereafter, Sergeant "Mothershed and Lieutenant Brown[4] . . . c[a]me back into the cell block to run gym call for the inmates." *Id.* at 7. Evans "notified Lieutenant Brown of the situation." *Id.* Lieutenant Brown responded, "I don't have time right now. I'm running yard call." *Id.* Sergeant Mothershed was standing there too, so Evans asked her to remove the leg restraints. "She just looked at [Evans] and didn't say [any]thing." *Id.* Thereafter, Evans "notified one [other] officer" on the cellblock. *Id.* That officer, like the others, did not remove the leg restraints.

Evans eventually tired of standing in the leg restraints and sat down on his bed. He subsequently "la[id] down and fell asleep with the leg restraints." *Id.* Although he was able to sleep for "a couple of hours," the "whole time" he experienced "pain on [his] leg because [he] kept . . . moving and jerking trying to get comfortable in the leg restraints." *Id.* Upon awakening, Evans realized that he needed to shower. Evans "had to cut off [his] jumpsuit and [his] boxers," *id.* at 8, "with a state-issued razor," R. Doc. 87-7, at 15, so that he could take a shower.

At 11:50 p.m., Evans called out to Lieutenant Joseph Bivens,[5] who was conducting legal mail and making a security round in the cellblock. Lieutenant Bivens went to Evans's cell and realized that Evans had been left in the leg restraints. Lieutenant Bivens immediately photographed Evans's legs and torn clothing,[6] had the leg restraints removed, and escorted him to the infirmary.

---

[4]Brown is not a named defendant.

[5]Bivens is not a named defendant.

[6]"The pictures are somewhat inconclusive, but the restraints appear to be tight around Evans's ankles, and there may be some minor swelling." R. Doc. 104, at 4 (citing R. Doc. 87-10, at 3–4).

Infirmary records show that Evans reported a pain level of "10/10" to his "lower extremities." R. Doc. 87-10, at 19. The examining nurse observed "[n]o edema . . . to bilateral lower extremities." *Id.* Her notes indicate that Evans was "[a]ble to wiggle [his] toes without grimacing, wincing, or complaints." *Id.* Evans was prescribed five days of naproxen to take, as needed, for pain and advised to "follow up with a sick call" if "symptoms worsen[ed]." *Id.* For the next 11 days, Evans continued to experience pain and numbness in his legs but sought no further medical treatment.

ADC supervisors investigated the incident. These supervisors concluded that "[Sergeant] Mothershed failed to properly inventory the leg irons and that [Sergeant] Smith and [Corporal] Taylor inadvertently left the leg irons on [Evans]." R. Doc. 103, at 8. They received written reprimands for their conduct.

Evans filed suit against Sergeants Mothershed and Smith and Corporal Taylor (collectively, "Officers"), alleging, *inter alia*, that they subjected him to excessive force by leaving him the leg restraints for 15 hours without any penological purpose. *See* 42 U.S.C. § 1983. The Officers moved for summary judgment on the basis of qualified immunity.

The magistrate judge issued a recommended disposition recommending that the district court grant the Officers' motion for summary judgment. Viewing the facts in the light most favorable to Evans, the magistrate judge concluded that although a jury could find that the Officers violated Evans's constitutional right to be free from excessive force, the violation of that right was not clearly established.

The district court, however, declined to adopt the magistrate judge's recommended disposition. The district court concluded that the magistrate judge took "too narrow" a reading of the case law when evaluating whether the law was clearly established. R. Doc. 106, at 4. According to the district court, existing Eighth Circuit

precedent "clearly established that prolonged restraints without penological justification can be excessive force." *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (concluding that handcuffing an inmate to a hitching post after he had expressed his willingness to return to work was a violation "so obvious that our own Eighth Amendment cases gave respondents fair warning that their conduct violated the Constitution"); *Jackson v. Gutzmer*, 866 F.3d 969, 977 (8th Cir. 2017) (reversing the denial of qualified immunity after determining that restraining an inmate on a restraint board for up to four hours constituted the use of force but concluding that this is "not a case where a complete absence of penological purpose raised the reasonable inference that [the correctional officer] acted maliciously in an effort to cause harm" (internal quotation marks omitted)); *Walker v. Bowersox*, 526 F.3d 1186, 1188 (8th Cir. 2008) (per curiam) (concluding that "trialworthy issues" existed as to whether restraining an inmate—who had submitted to recuffing, thereby "removing any need for force"—for 24 hours constituted the excessive and disproportionate use of force, amounting to cruel and unusual punishment)). Based on the existing case law, the district court concluded that the Officers were "on notice that leaving an inmate in restraints for 15 hours or more after heated arguments between the [Officers] and the inmate resulting in threats of harm to the inmate by the [Officers] when there is no penological need for restraint could violate the Eighth Amendment." *Id.* at 5.

## II. *Discussion*

On appeal, the Officers argue that the district court erred in denying them qualified immunity for two reasons: (1) Evans failed to prove a constitutional violation because he cannot prove that the defendants used any force against him or that he was injured, and (2) it was not "clearly establish[ed] that leaving an inmate who was already in restraints in those restraints can constitute excessive use of force." Appellants' Br. at 15.

-6-

We review de novo the district court's denial of qualified immunity. *See Fisherman v. Launderville*, 100 F.4th 978, 980 (8th Cir. 2024). "We have limited interlocutory review in qualified-immunity cases, meaning we lack jurisdiction to decide factual issues, including whether the pretrial record sets forth a genuine issue of fact for trial." *Id.* (internal quotation marks omitted). But we have jurisdiction to address pure issues of law. *Id.* The two frequent issues of law that we decide in qualified immunity cases are as follows: "First, accepting the district court's factual findings as true, did the defendant violate a constitutional right? And second, was the right clearly established at the time? If either answer is no, then qualified immunity applies." *Id.* (cleaned up).

In reviewing a district court's denial of qualified immunity, our resolution of these pure issues of law "typically" results in "one of two paths on appeal":

> First, we may affirm, but only when it is apparent that, if the plaintiff's version of the facts is right, the officer violated a clearly established right. Second, we may reverse because, even under the plaintiff-friendly version of the facts, there was no constitutional violation or the underlying right was not clearly established.

*N.S. v. Kan. City Bd. of Police Comm'rs*, 933 F.3d 967, 969 (8th Cir. 2019) (citation omitted). This case falls into the first category; as a result, we affirm the district court's denial of qualified immunity to the officers.

## A. *Constitutional Violation*

Once an individual is incarcerated, "only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. What constitutes the unnecessary and wanton infliction of pain varies based on the alleged constitutional violation." *Stewart v. Precythe*, 91 F.4th 944, 949 (8th Cir. 2024) (internal quotation marks omitted). When an inmate brings an excessive force claim against prison officials, "the core judicial inquiry is whether

*force* was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to *cause harm*." *Id.* (emphases added) (cleaned up). In resolving this inquiry, our "focus [is] on such factors as the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Id.* (cleaned up). Application of these factors aids us in "draw[ing] inferences as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Id.* (cleaned up). We also have noted that "the word *sadistically* is not surplusage; *maliciously* and *sadistically* have different meanings, and the two together establish a higher level of intent than would either alone." *Id.* (emphases added) (cleaned up).

In the present case, there is no dispute that the Officers' refusal to remove the leg restraints was *not* for the purpose of "maintain[ing] or restor[ing] discipline." *Id.* (internal quotation marks omitted); *see also* R. Doc. 106, at 3 ("[T]he parties do not dispute that there was no penological need to keep Mr. Evans in leg restraints for fifteen hours while he was secure in his one-man cell." (cleaned up)). And the Officers have not challenged the district court's determination that "there are material factual disputes" regarding "whether the [Officers] *maliciously* and *sadistically* left the leg restraints on Mr. Evans in order to cause him harm." R. Doc. 106, at 3 (emphases added) (internal quotation marks omitted). Instead, the Officers argue that no constitutional violation occurred because Evans failed to prove that they used force or that he was injured.

### 1. *Force*

The Officers first argue that Evans has failed to establish a constitutional violation because he neither alleged nor proved that they used any force against him. They maintain that their "failure to remove Evans'[s] leg restraints is not a use of force[;] it is an absence of force." Appellants' Br. at 11. They also note that "an Eighth Amendment excessive force claim cannot be based on a *de minimis* amount

-8-

of force"; as a result, they argue that "*not* touching a person" is at least a "minimal use of force." *Id.*

Courts have "applied the constitutional use-of-force framework to" "passive restraints." *United States v. Hill*, 99 F.4th 1289, 1300 (11th Cir. 2024) (citing *Williams v. Burton*, 943 F.2d 1572, 1575 (11th Cir. 1991) (per curiam) (characterizing the use of four-point restraints as "force"); *Gold v. City of Miami*, 121 F.3d 1442, 1446–47 (11th Cir. 1997) (per curiam) (referring to tight handcuffing for 20 minutes as a use of "force")). This is because a restraint's "passive" nature "does not preclude the conclusion that it constitutes 'force.'" *Id.* We have "had occasion to consider Eighth Amendment [excessive-force] claims in the context of prisoner restraint, providing parameters for when a specific restraint amounts to a constitutional violation." *Stewart*, 91 F.4th at 950.[7]

For example, in *Gutzmer*, we held that a correctional officer who "restrained an unruly prisoner on a restraint board for up to four hours, in compliance with correctional facility policy," was entitled to qualified immunity. *Id.* at 951 (citing *Gutzmer*, 866 F.3d at 977). In that case, the inmate "admitted causing a disturbance so that he could bypass prison rules for obtaining medical attention," which "warrant[ed] discipline." *Gutzmer*, 866 F.3d at 977. The correctional officer "placed [the inmate] on a restraint board for up to four hours, complying with [prison] policies governing its use . . . , obtaining prior medical clearance, and having a nurse make sure his placement on the board was not injurious or painful." *Id.* There was no

---

[7]We have also addressed a case involving an Eighth Amendment conditions-of-confinement claim. *Id.* at 950–51(citing *Key v. McKinney*, 176 F.3d 1083, 1085–86 (8th Cir. 1999) (upholding a judgment in favor of correctional officers on an Eighth Amendment conditions-of-confinement claim based on the plaintiff's allegation that pursuant to facility policy, he had been shackled for 24 hours after throwing water on a correctional officer during a work detail and had received routine checks by a nurse and correctional officers)).

dispute that placing the inmate on the restraint board involved force; instead, the question concerned the correctional officer's intent—"whether undisputed facts establish that force was applied in a good-faith effort to maintain or restore discipline, or whether [the correctional officer] applied force maliciously and sadistically to cause harm." *Id.* at 976 (internal quotation marks omitted). Based on the "undisputed facts," we concluded that "this is not a case where a complete absence of penological purpose raised the reasonable inference that [the correctional officer] acted maliciously in an effort to cause harm." *Id.* at 977 (cleaned up); *see also Stewart*, 91 F.4th at 951 (concluding that an inmate's "allegation that [the prisoner director] promulgated a policy of handcuffing and shackling a prisoner to a bench for a period of hours, coupled with his allegation that on two occasions he was restrained for over two hours, do not, *on their own*, violate the Eighth Amendment" and holding that prison director was entitled to qualified immunity on inmate's excessive force claim and conditions-of-confinement claim (emphasis added)).

By contrast, in *Walker*, we held that genuine issues of material fact existed as to whether correctional officers used excessive force when they left a prisoner "restrained on a bench" for 24 hours after he refused to accept a specific cell mate. 526 F.3d at 1188. There, the inmate, "after being moved from a one-man cell to a two-man cell, . . . slipped out of his handcuffs and refused to submit to recuffing, because he did not wish to be celled with the proposed cell mate." *Id.* But "soon thereafter [he] submitted to cuffing, thereby removing any threat or need for force." *Id.* Nonetheless, the inmate was "restrained on the bench for twenty-four hours." *Id.* During that time, the inmate lacked "access to water . . . or a bathroom"; "was denied . . . food"; lacked "access to his . . . medications"; had "to sit in an upright position"; and experienced "exacerbations of his chronic back pain and post traumatic stress disorder." *Id.* "We f[ound] trialworthy issues as to whether *imposing such conditions* on [the inmate] to make him accept a specific cell mate was an excessive and disproportionate *use of force*, amounting to cruel and unusual punishment." *Id.* (emphases added).

Here, Evans has not claimed his that *initial* placement in leg restraints constituted excessive force; instead, he challenges only the Officers' *affirmative refusal* to remove the leg restraints as excessive force. *See* R. Doc. 87-1, at 5–7. "Although less common than the direct application of force, subjecting a prisoner to special confinement that causes him to suffer increased effects . . . can constitute excessive force." *Danley v. Allen*, 540 F.3d 1298, 1308 (11th Cir. 2008) ("Although the initial pepper spraying itself was not excessive force, . . . . Danley's complaint groups together the initial spraying *and the subsequent twenty-minute confinement* as a single instance of excessive force." (emphasis added)), *overruled on other grounds as recognized by Randall v. Scott*, 610 F.3d 701 709 (11th Cir. 2010); *cf. Norton v. City of Marietta*, 432 F.3d 1145, 1154 (10th Cir. 2005) ("Whether defendants' use of the spray was objectively harmful enough to violate plaintiff's Eighth Amendment rights turns in part on how long plaintiff was sprayed and *whether he was . . . left to suffer unnecessarily*." (emphasis added)); *Wall v. Cnty. of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004) ("On Wall's version of the facts, Watson *used excessive force* in making the arrest *and continuing the restraint* by handcuffs that hurt and damaged Wall's wrist. Again, Watson would have violated a clearly established constitutional right to be free of excessive force." (emphases added)). Indeed, we recognized in *Walker* that subjecting an inmate to special conditions resulting in increased effects can constitute excessive force. 526 F.3d at 1188 (finding "trialworthy issues as to whether imposing [certain] *conditions* on [the defendant] . . . was an excessive and disproportionate *use of force*" (emphases added)).

Here, the Officers did not merely negligently fail to remove Evans's leg restraints by oversight. Instead, Evans produced evidence that the Officers refused to remove his leg restraints for a 15-hour period, during which time he (1) experienced "pain on [his] leg because [he] kept . . . moving and jerking trying to get comfortable in the leg restraints" while he was trying to sleep, R. Doc. 87-1, at 7; (2) "had to cut off [his] jumpsuit and [his] boxers," *id.* at 8, "with a state-issued razor," R. Doc. 87-7, at 15, so that he could take a shower; and (3) suffered a pain level of "10/10" to his

"lower extremities" as a result of the prolonged restraint, R. Doc. 87-10, at 19. As a result, we hold that the Officers' imposition of "such conditions" on Evans was a "use of force." *Walker*, 526 F.3d at 1188.

## 2. *Injury*

The Officers next argue that Evans failed to prove the violation of a constitutional right because he did not produce evidence "that he suffered any discernable injury." Appellants' Br. at 12. They assert that a reasonable fact finder could not find "that Evans was injured when his blood flow was restricted by leg irons that [were] loose enough to fit over articles of clothing, [did] not leave any indentations, [did] not cause any edema, and [did] not cause any grimacing, wincing, or complaints when wiggling his toes." *Id.* at 13.

"[A] claim of excessive force does not fail simply because a prisoner suffers only *de minimis* injury." *Richardson v. Duncan*, 117 F.4th 1025, 1029 (8th Cir. 2024). The focus of an excessive force claim is "on the force used by a prison official. A prisoner may suffer 'pain' as contemplated by the Eighth Amendment if a prison official applies excessive force, even if the prisoner's physical injury is not serious." *Id.* (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37–38 (2010)). "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins*, 559 U.S. at 38.

As explained *supra*, the Officers' refusal to remove Evans's leg restraints for 15 hours constitutes a use of force. Furthermore, "the parties do not dispute that there was no penological need to keep Mr. Evans in leg restraints for fifteen hours while he was secure in his one-man cell." R. Doc. 106, at 3 (cleaned up). As a result, Evans suffered a "gratuitous[]" use of force. *See Wilkins*, 559 U.S. at 38. He did "not lose his ability to pursue an excessive force claim" against the Officers even assuming that

-12-

he "ha[d] the good fortune to escape without serious injury." *Id.* But we note that construing the facts in the light most favorable to Evans, he did suffer more than a de minimis injury. Infirmary records show that Evans reported a pain level of "10/10" to his "lower extremities." R. Doc. 87-10, at 19. Evans was also prescribed five days of Naproxen to take as needed. For the next 11 days, Evans reported that he continued to experience pain and numbness in his legs.

Accordingly, we reject the Officers' argument that Evans failed to establish a constitutional violation.

## B. *Clearly Established*

The Officers argue that they are nonetheless entitled to qualified immunity because "[a]lthough unnecessary application of passive restraints can, occasionally, create an excessive use of force claim, none of these cases clearly establish that leaving an inmate who was already in restraints in those restraints can constitute excessive use of force." Appellants' Br. at 15.[8] In support of their argument, they

---

[8]We note what the Officers have *not* argued on appeal: that the case law is not clearly established because the *type* of restraint used in this case—leg restraints—differs from the type of restraints used in other cases. *See, e.g.*, *Hope*, 536 U.S. at 741 (handcuffing inmate to a hitching post); *Gutzmer*, 866 F.3d at 977 (restraining inmate on restraint board); *Walker*, 526 F.3d at 1188 (restraining inmate on bench). The magistrate judge had concluded that "a hitching post, restraint board, and restraint bench are fundamentally different—*i.e.*, more restrictive, publicly humiliating, and uncomfortable—than the leg restraints at issue in this case." R. Doc. 104, at 9–10. But the district court rejected this "reading of the cases [as] too narrow." R. Doc. 106, at 4. Because the Officers have not raised this argument, we need not address it. Nonetheless, we note the Supreme Court's observation in *Hope* that "for the purpose of providing fair notice to reasonable officers" there is no "reason to draw a constitutional distinction between a practice of handcuffing an inmate to a fence for prolonged periods and handcuffing him to a hitching post for seven hours." 536 U.S. at 742. Drawing such a distinction "exposes the danger of a rigid, overreliance on factual similarity." *Id.*

-13-

contend that in *Walker* and *Gutzmer*, the excessive force was the correctional officers' application or authorization of the restraints. By contrast, the Officers did not apply the restraints to Evans but instead failed to remove them.

We disagree. Evans has not alleged that the Officers merely *failed to remove* his leg restraints; instead, he alleged and produced evidence that he repeatedly asked them to remove the leg restraints *and they refused*. *See* R. Doc. 87-1, at 5–7. Their refusal to remove the leg restraints subjected Evans to certain conditions that constituted a use of force. As explained *supra*, *Walker* sufficiently placed the Officers on notice that subjecting an inmate to special conditions resulting in increased negative effects can constitute excessive force. 526 F.3d at 1188 (finding "trialworthy issues as to whether imposing [certain] *conditions* on [the defendant] . . . was an excessive and disproportionate *use of force*" (emphases added)).

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

SHEPHERD, Circuit Judge, dissenting.

In the light most favorable to Evans, Officers escorted Evans back to his cell but did not remove his leg restraints, which remained on Evans's ankles untethered to any other object. During the 15 hours the restraints remained in place, Evans walked around his cell, slept on his bunk, and showered. On medical examination the following morning, Evans was able to wiggle his toes without grimace or complaint; he could walk; he had no edema; and he never complained about lingering issues with his legs again after that. Because it is not clearly established that these conditions violate the constitution, see, e.g., Key v. McKinney, 176 F.3d 1083, 1085-86 (8th Cir. 1999) (upholding judgment in favor of correctional officers who restrained prisoner in handcuffs and leg shackles for 24 hours); Martz v. Barnes, 787 F. App'x 356, 358 (8th Cir. 2019) (per curiam) (granting qualified immunity to officers who denied an

-14-

inmate a decontamination shower or change of clothes after the inmate was pepper sprayed); Jackson v. Gutzmer, 866 F.3d 969, 971, 978 (8th Cir. 2017) (granting qualified immunity to officers who placed a prisoner on a restraint board for several hours), I respectfully dissent.

Under this Court's precedent on the clearly established prong, officers are entitled to qualified immunity unless "the violative nature of [the] *particular* conduct is clearly established." See Kelsay v. Ernst, 933 F.3d 975, 979 (8th Cir. 2019) (en banc) (citation omitted). I believe the majority erred by examining the state of precedent at too "high [a] level of generality." See id.

A right is clearly established only if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Ehlers v. City of Rapid City, 846 F.3d 1002, 1008 (8th Cir. 2017) (first alteration in original) (citation omitted). While this does not mean "that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful," see Johnson v. Carroll, 658 F.3d 819, 827 (8th Cir. 2011) (citation omitted), it does mean "the unlawfulness must be apparent" in light of the existing law, Hope v. Pelzer, 536 U.S. 730, 739 (2002) (citation omitted). Thus, a plaintiff must point to "either 'controlling authority' or 'a robust "consensus of cases of persuasive authority"'" that 'placed the statutory or constitutional question beyond debate' at the time of the alleged violation." Kelsay, 933 F.3d at 979 (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741-42 (2011)).

Here, Evans failed to do so because none of the relevant cases "squarely governs the specific facts at issue." Id. at 980 (citation omitted). In Hope, the inmate was handcuffed to a *hitching post*—which forced him to stand with his hands at face level—with barely any water, no shirt, and no bathroom access for seven hours "while the sun burned his skin." 536 U.S. at 733-35 & n.1. In Walker v. Bowersox, 526 F.3d 1186, 1188 (8th Cir. 2008) (per curiam), the prisoner was subjected to a

restraint *bench* for 24 hours with no food or bathroom breaks, no access to his pain or heartburn medications, and barely any water. Moreover, in Jackson, 866 F.3d at 971, 978, even though the plaintiff spent several hours on a restraint *board*, the officers were found entitled to qualified immunity. While all of these cases deal with restraints generally, "[t]he state of the law should not be examined at a high level of generality." See Kelsay, 933 F.3d at 979. Unlike the plaintiffs in the cited cases, Evans was subject to *leg* restraints—a condition which has not been addressed in any of the applicable cases—and the restraints were not bound to any object, providing Evans with enough freedom to remain in his cell, walk, sit, lay down, sleep, cut off his jumpsuit, and shower. See ante, at 4.

The differences between the facts here and those in the cited cases are constitutionally significant. Cf. Hope, 536 U.S. at 742 (noting no constitutional distinction "between a practice of handcuffing an inmate to a fence for prolonged periods and handcuffing him to a hitching post for seven hours"); see also ante at 13 n.8. The relied upon cases "share some overlap with the instant case," see Ledbetter v. Helmers, 133 F.4th 788, 798 (8th Cir. 2025), but are dissimilar enough that a reasonable officer would not have understood the conduct in this case to violate a constitutional right. Our binding precedents require us to pay special heed to "the specific facts at issue," particularly in excessive force cases. See Kelsay, 933 F.3d at 980 (quoting Kisela v. Hughes, 584 U.S. 100, 104 (2018) (per curiam)). Furthermore, this is not "'the rare obvious case' in which 'the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances.'" Id. at 981-82 (quoting District of Columbia v. Wesby, 583 U.S. 48, 64 (2018)). Thus, unless this Court decides en banc that a greater level of generality is appropriate, I believe we must grant qualified immunity in this case. See Mader v. United States, 654 F.3d 794, 800 (8th Cir. 2011) (en banc).

The majority determines we need not address this issue because the Officers' appeal focused on the distinction between active and passive force rather than on the

type of restraint used in the case. See ante, at 13 n.8. While it is true the Officers did not highlight this particular argument, they did argue on appeal that it has not been clearly established that the conduct alleged would constitute excessive use of force, and they distinguished each of the relied upon cases from the present facts. Appellant Br. 14-18. I would thus hold that this similarity argument is "fairly encompassed" within the arguments presented. See Gap, Inc. v. GK Dev., Inc., 843 F.3d 744, 749 (8th Cir. 2016) (noting this Court will consider "new arguments raised on appeal where the new issue is encompassed in a more general argument previously raised and no new evidence is presented on appeal" (citation omitted)); cf. 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 273 (2009) (discussing Supreme Court Rule 14.1(a) regarding what is fairly encompassed within a question presented).

Finally, because I would resolve this case on the clearly established prong, I would decline to decide whether the conduct here rises to the level of a constitutional violation. See Pearson v. Callahan, 555 U.S. 223, 236 (2009) (authorizing courts of appeals to "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand").

For these reasons, I respectfully dissent. I would reverse the district court's denial of qualified immunity and remand this matter with instructions to enter judgment dismissing the amended complaint.

_____